# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.B. Jr. and R.B.-M.**

**No. 19-0866** (Harrison County 18-JA-147-2 and 18-JA-148-2)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.B. Sr., by counsel Ryan C. Shreve, appeals the Circuit Court of Harrison County's August 26, 2019, order terminating his parental and custodial rights to R.B. Jr. and R.B.-M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for a post-adjudicatory improvement period, and terminating his parental rights instead of imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner and Y.B., the mother of R.B. Jr., engaged in domestic violence in the children's presence and that R.B. Jr. suffered extensive injuries while in their care. In April of 2019, the circuit court held an adjudicatory hearing, at which it heard evidence concerning the incident giving rise to the petition. Specifically, the evidence established that petitioner arrived at the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

home of J.M., the nonabusing mother of R.B.-M., to pick up Y.B. Upon arriving, petitioner and Y.B. "'tussl[ed]' over her cell phone." During the physical altercation, Y.B., intending to strike petitioner, instead struck R.B. Jr "in the head with [a] toy, leaving a mark on the child's forehead." According to the evidence, the fight continued outside. Ultimately, petitioner, the father, and the child returned "to the home . . . [petitioner] shared with" the father. That evening, the altercation between the parents "reignited and became physical with [petitioner] choking, hitting[,] and sitting on [Y.B.] multiple times." Both parents admitted that the altercation lasted all night and that R.B. Jr. was present.

The next morning the parents left to pick up R.B.-M. and took R.B. Jr. with them. Upon arriving at J.M.'s home to pick up R.B.-M., Y.B. "ran into the home to call the police and report being held captive by [petitioner] throughout the night." According to Y.B., petitioner remained in the car with R.B. Jr. while she was on the phone with law enforcement. While she was inside, petitioner removed the minor child from the vehicle and placed the one-year-old child on the stoop of the home. Both petitioner and Y.B. indicated that R.B. Jr. did not have any injuries prior to leaving petitioner's home. While Y.B. was inside speaking to law enforcement, petitioner admits that he "le[ft] the child unsupervised while . . . [he] was trying to gain access to the apartment."

Once law enforcement arrived on the scene, petitioner "noticed the child's leg which had abrasions over his ankle and approached a police officer . . . for the child to receive aid." After being transferred between hospitals, R.B. Jr. was ultimately diagnosed with a comminuted tibia fracture and a right heel fracture. Based on the testimony of a medical expert, "a comminuted tibia fracture is rare" and "[a] heel fracture is exceedingly rare and the combination of the two is even . . . rare[r]." According to the medical expert, "the type of force necessary for these fractures is a high energy high impact fracture requiring significant force onto the bone[,]" which could occur, for example, in "a motor vehicle accident or a fall from a significant height, which for a child would be [five] to [ten] feet." The expert further testified that "the injury would be very painful and the child would have expressed a significant amount of pain," resulting in the parents having "immediately known the child was injured." According to the adjudicatory order, Y.B. "offered multiple explanations as possible causes of injury . . . such as the possibility of [petitioner] running over the child's leg, his foot becoming stuck in a hole near the step of [the] home, or being hit in the head by a toy." According to the medical expert, however, "the explanations offered did not match the injury pattern," which indicated that "the injury [was] a result of non-accidental trauma." Petitioner did not offer law enforcement any explanation for the child's injuries. Based upon this evidence, the circuit court found that petitioner failed to adequately supervise the child and engaged in domestic violence in the presence of both children. Further, the circuit court found that R.B. Jr. "sustained traumatic injuries for which there has been no reasonable explanation offered" and that this "indicat[ed] that the child suffered non-accidental trauma." Despite being in the care, custody and control of petitioner and Y.B. at the time of the injury, "[t]he perpetrator of the abuse has not been identified." As such, the circuit court adjudicated petitioner as an abusing parent in regard to the children.

In May of 2019, the circuit court held a dispositional hearing, during which it found that petitioner's "failure to identify a mechanism of injury or to take responsibility for the injury of the minor child" was evidence that the conditions necessitating the petition's filing could not be

corrected. Because both children were at risk for continued physical abuse, the circuit court found that termination of petitioner's parental and custodial rights was necessary for their welfare. Accordingly, the circuit court terminated petitioner's parental and custodial rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner asserts that the circuit court erred in adjudicating him as an abusing parent because the circuit court erroneously found that there was an unknown perpetrator of physical abuse of R.B. Jr. and misapplied this Court's prior holdings regarding the failure to identify abusers. Upon review, however, we find no error in the adjudication below.

As this Court has routinely held,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will

---

[2]R.B. Jr.'s mother's parental and custodial rights were terminated and the permanency plan for the child is either adoption in his current foster placement or, concurrently, permanent legal guardianship. The permanency plan for R.B.-M. is to remain in the nonabusing mother's custody.

produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted). Finally, pursuant to West Virginia Code § 49-1-201, an abused child is one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Our review of the record shows that the DHHR satisfied the applicable burdens and established that the children were abused children.

Central to petitioner's argument is his assertion that the circuit court erred in applying the following holding from this Court:

> Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). In support of his argument, petitioner attempts to distinguish the facts of the underlying case from those in *Jeffrey R.L.* and in *West Virginia Department of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Unlike those cases, petitioner argues, "[i]n this case, evidence concerning injury [to R.B. Jr.] is far from clear." According to petitioner, the medical expert that testified below "testified that the hole near the step could be a possible mechanism of the injuries to the child." However, reviewing the portions of the expert's testimony to which petitioner cites does not support this assertion. In fact, quite the opposite is true. During the expert's testimony, the following exchange occurred:

Q.    Could the injuries that you have seen and treated, as well as from viewing the photographs, and I'm going to refer you back to . . . the first picture that has a picture of the steps, the sidewalk, could a hole that size that you're seeing cause this fracture?

A.    It depends on how deep the hole is and how hard the fall was.

Q.    Is that hole, from being able to view it, big enough for a child's foot to have been caught in?

A.    It's hard to say. I'm not sure without seeing the hole.

Q.    If the child had been hurt while on that step, and the parents were in the vicinity, would they know or should they have known that the child was hurt?

A.      Yes.

Q.      If the child had his leg and foot slammed in a car door would the person who did that know, or should they have known, that they had injured the child?

A.      I believe so.

Q.      Would that be a possible mechanism of the combination fractures that you saw this child with?

A.      It's a possible mechanism.

Q.      Is this pull [sic] a possible mechanism if, indeed, that occurred with both fractures?

A.      The calcaneus fracture comes from a significant load so meaning that a significant amount of force on the leg into the ground. So if the fall is hard enough possibly, but from that step it's just hard to say.

Q.      If there was no fall to the step? If the testimony was that maybe his foot got stuck in that, would that cause that?

A.      That I would not suspect to cause a fracture pattern like this.

Q.      And if he fell with his own bodyweight; if he just got his foot stuck and fell, would that cause a fracture of this type?

A.      The fracture pattern that I saw is not from a typical fall, a short distance fall.

Q.      So the child's own bodyweight could not cause the type of fractures that you saw?

A.      No, no.

Q.      So that is all that there is there . . . you're going up the sidewalk, there's the hole, the little step and there's the door. There's not enough of a fall that could occur with the child's own bodyweight to cause that injury?

A.      I do not believe so.

Looking at this testimony, it is clear that the doctor did *not* believe that "the hole near the step could be a possible mechanism of the injuries to the child," as petitioner argues on appeal.

Petitioner asserts that the medical expert testified that "the statistical likelihood of injury being caused by an accidental mechanism was less likely than some other 'non-accidental'

mechanism." Such argument ignores the expert's clear testimony that, absent any plausible explanation from either of the child's caregivers at the time of injury, his opinion to a reasonable degree of medical certainty was that the injury was the result of non-accidental trauma. Petitioner argues that the circuit court erred in finding that the injuries were inflicted by an unknown perpetrator because he believes our prior holdings require that "an incontrovertibly intentional mechanism of injury is an analytical prerequisite." However, as set forth above, the evidence established that R.B. Jr. suffered non-accidental trauma and that the multiple explanations provided were incompatible with the medical evidence of the child's injuries. As such, we find no error in the circuit court's adjudication of petitioner as an abusing parent to both children.

Given that petitioner's two remaining assignments of error are predicated on accepting that adjudication was erroneous, we find that he is not entitled to relief in regard to either. Instead of belaboring petitioner's specific arguments, resolution of both his assertion that the circuit court erred in denying his motion for a post-adjudicatory improvement period and erred in terminating his parental and custodial rights turn on the following:

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the record clearly establishes that petitioner failed to acknowledge the conditions of physical abuse at issue. Indeed, on appeal, petitioner asserts that "[a]bsent the erroneous 'unknown perpetrator' finding, [he] was able to acknowledge his failures in relation to the allegations." Given petitioner's admission that he still fails to acknowledge the issue of R.B. Jr.'s physical abuse, it is clear that denial of an improvement period and termination of his parental and custodial rights were appropriate.

This Court has held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). As set forth above, petitioner's failure to acknowledge the physical abuse to R.B. Jr. meant that any improvement period awarded to him would have been "an exercise in futility at the child[ren]'s expense." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363. As such, we find no error in the circuit court's denial of petitioner's request for a post-adjudicatory improvement period.

Finally, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental and custodial rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c), "'no

6

reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence of petitioner's failure to acknowledge the existence of a problem conclusively establishes that petitioner could not correct the conditions of abuse and neglect because the problem was untreatable. Regardless of any evidence to which petitioner cites concerning his acknowledgment of other conditions, such as domestic violence or improper supervision, his failure to acknowledge R.B. Jr.'s physical abuse established that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future.

Additionally, because the circuit court specifically found that the children were at risk of further physical abuse, their welfare required termination of petitioner's parental and custodial rights. Contrary to petitioner's argument that he should have been entitled to a less-restrictive dispositional alternative, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Further, regarding petitioner's argument that his parental and custodial rights to R.B.-M. should not have been terminated because the child achieved permanency in the care of the nonabusing mother, we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. As such, it is clear that the circuit court did not err in terminating petitioners' parental and custodial rights.[3]

---

[3]In support of his assignment of error regarding termination, petitioner also asserts, in passing, that the circuit court erred in denying his request for post-termination visitation. In support, petitioner asserts that such visitation would be in the children's best interests because "there was evidence throughout the proceedings that a loving bond existed between both father and children." However, petitioner fails to cite to any such evidence. This Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among

(continued . . . )

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 26, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 26, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Given petitioner's failure to acknowledge the physical abuse of R.B. Jr., coupled with his failure to cite to any evidence to support his assertion that continued visitation would be in the children's best interests, we find no error in this regard.